UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
SCF ARIZONA,                      :

                Plaintiff,     :   09 Civ. 9513 (WHP)

           -against-            :   MEMORANDUM & ORDER

WELLS FARGO BANK, N.A.,           :

                Defendant.     :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/1/11

WILLIAM H. PAULEY III, District Judge:

        Plaintiff SCF Arizona ("SCF") sues Defendant Wells Fargo Bank, N.A., successor to Wachovia Bank, N.A. ("Wachovia")[1] to recover losses sustained as a result of its $ 25 million investment in a two-year floating rate note issued by Lehman Brothers (the "Lehman Note" or "Note"). Wachovia moves for summary judgment on Plaintiff's claims and to strike the affidavit of SCF's CEO Donald Smith ("Smith"). For the following reasons, Wachovia's motions are denied.

BACKGROUND

I. The Parties and their Relationship

        SCF is a statutory workers compensation fund in Arizona. (Defendant's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1 Stmt.") ¶¶ 1, 3; Plaintiff's Counter Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1 Stmt.") ¶

---

[1] For the purposes of this motion, Wells Fargo, Wachovia and all of Wachovia's predecessors are referred to collectively as "Wachovia."

1.) Its investments are managed by an "Investment Team" responsible for "day-to-day" oversight. (Def. 56.1 Stmt. ¶¶ 7, 9, 16; Pl. 56.1 Stmt. ¶¶ 7, 9, 16.) Anna Rodriguez ("Rodriguez"), a Vice President of Investments at SCF, was a member of the Investment Team. (Def. 56.1 Stmt. ¶¶ 10-11; Pl. 56.1 Stmt. ¶¶ 10-11.) SCF also had an internal "Investment Committee," consisting of Smith, Rodriguez and other senior SCF executives. (See Def. 56.1 Stmt. ¶¶ 21-28; Pl. 56.1 Stmt. ¶¶ 21-28.) The Investment Committee "act[ed] in an advisory capacity to the Investment Team." (Declaration of K. Issac Devyver ("Devyver Decl.") Ex. V: "Long Term Investments – Policies and Procedures" dated Oct. 27, 2008 at SCF004885; Pl. 56.1 Stmt. ¶ 30.)

In 1986, SCF began a securities lending relationship with Wachovia's predecessor. (Def. 56.1 Stmt. ¶ 46; Pl. 56.1 Stmt. ¶ 46.) This relationship was memorialized in an "Agreement for Securities Lending Services" which was amended in April 2008. (Devyver Decl. Ex. R: Agreement For Securities Lending Services dated July 10, 1991 (the "Agreement") at WACH-SCF-94086-90; Ex. R: Amendment To Assignment of Agreement For Securities Lending Services dated Apr. 25, 2008 at WACH-SCF-94067- 68; see Def. 56.1 Stmt. ¶¶ 47-48; Pl. 56.1 Stmt. ¶¶ 47-48.) The Agreement, governed by the laws of Arizona, authorized Wachovia to lend SCF's securities to certain approved borrowers. Lehman Brothers was an authorized borrower from at least 1995 until its bankruptcy. (Def. 56.1 Stmt. ¶¶ 51-53; Pl. 56.1 Stmt. ¶¶ 51-53; Devyver Decl. Ex. R: SCF Arizona List of Approved Borrowers dated Dec. 11, 2006 at WACH-SCF-94147; Devyver Decl. Ex. R: the Agreement at WACH-SCF-94090.)

The Agreement required Wachovia to "maintain, protect, and apply any collateral given in connection with a loan of [SCF's] securities." (Devyver Decl. Ex. R: at WACH-SCF-

94087.) It also created an "Agency Relationship" among the parties and established guidelines governing Wachovia's investment of cash collateral. (Devyver Decl. Ex. R: at WACH-SCF-94209; see also WACH-SCF-940878, 94208-9429; Def. 56.1 Stmt. ¶¶ 57-59; Pl. 56.1 Stmt. ¶¶ 57-59.) As SCF's agent, Wachovia was also authorized to sell its collateral investments. (Def. 56.1 Stmt. ¶ 90; Pl. 56.1 Stmt. ¶ 90.)

Wachovia delivered monthly reports about the portfolio to SCF. (See Devyver Decl. Ex. E: Deposition of A. Rodriguez dated Nov. 17, 2010 at 113; Ex. R: at WACH-SCF-94088 (¶ j).) On occasion, Wachovia notified SCF about risky investments. (See Karlinsky Decl. Ex. 19: Email From Brian Gorman to A. Rodriguez at Bates No. WACH-SCF-18465; Ex. 15: Letter from R. Rick Moos to Jerry LeCompte dated Dec. 13, 1994; see also Ex. 16 Letter from R. Rick Moos to Jerry LeCompte dated Jan. 27, 1998.) Prior to the Lehman Bankruptcy, SCF never complained about Wachovia's securities lending. (Def. 56.1 Stmt. ¶¶ 67-73; Pl. 56.1 Stmt. ¶¶ 67-73.)

In 2007 and 2008, SCF maintained an external investment portfolio with Conning Asset Management ("Conning") and Wellington Management Company, LLP ("Wellington"). (Def. 56.1 Stmt. ¶¶ 39, 42; Pl. 56.1 Stmt. ¶¶ 39, 42.) SCF also employed Strategic Asset Alliance ("SAA") as its investment consultant. (Def. 56.1 Stmt. ¶¶ 35-36; Pl. 56.1 Stmt. ¶¶ 35-36.)

II. The Lehman Brothers Investment

In March 2007, Wachovia invested $ 25 million of SCF's cash collateral in the Lehman Note. (Devyver Decl. Ex. BB: SCF Arizona Securities Lending Statement for the

Month Ending March 31, 2007 at SCF04741; Def. 56.1 Stmt. ¶ 125; Pl. 56.1 Stmt. ¶ 125.) At that time, the Agreement permitted investments in Lehman Brothers, which was highly rated by S&P, Moody's and Fitch. (See Declaration of Martin E. Karlinsky ("Karlinsky Decl.") Ex.1: First Amend. Complaint of SCF dated Feb. 11 2010 ("Compl.") ¶ 43; Def. 56.1 Stmt. ¶ 130; Pl. 56.1 Stmt. ¶ 130.) However, by July 2007 Wachovia restricted investments in Lehman Brothers securities. (See Def. 56.1 Stmt. ¶¶ 164-65; Pl. 56.1 Stmt. ¶¶ 164-65.) And, in March 2008, Wachovia classified the Note as "medium risk" on its internal watch list. (Def. 56.1 Stmt. ¶¶ 166-67; Pl. 56.1 Stmt. ¶¶ 166-67.) In May 2008, Wachovia re-classified it as a "high risk asset." (Def. 56.1 Stmt. ¶ 181; Pl. 56.1 Stmt. ¶ 181.) Over the next few months Wachovia placed various caps on investments in Lehman Brothers. (Def. 56.1 Stmt. ¶¶ 184-87; Pl. 56.1 Stmt. ¶¶ 184-87.)

Throughout this period, Wachovia considered whether it should execute a wholesale liquidation of investments in Lehman Brothers but ultimately decided the "best course of action would be to hold [Lehman Brothers] securities to maturity." (Devyver Decl. Ex. O: Deposition of Kevin O'Connor dated Dec. 17, 2010 ("O'Connor Dep.") at 184, 185-88; Pl. 56.1 Stmt. ¶ 189; see Def. 56.1 Stmt. ¶ 189.) Wachovia implemented this decision across the board to all of its clients. (See O'Connor Dep. at 184-88.) That decision and the other actions Wachovia took concerning Lehman Brothers were never communicated to SCF. (Def. 56.1 Stmt. ¶¶ 168-69; Pl. 56.1 Stmt. ¶¶ 168-69.) And SCF never asked Wachovia about the appropriateness of its investment in the Lehman Note. (Def. 56.1 Stmt. ¶¶ 168-69; Pl. 56.1 Stmt. ¶¶ 168-69.)

III. SCF Considers Selling the Lehman Note

In the summer of 2008, SCF considered selling off some of its collateral investments. (See Def. 56.1 Stmt. ¶¶ 192-198; Pl. 56.1 Stmt. ¶¶ 192-198.) This prompted Rodriguez to direct Wachovia to obtain bids for SCF's entire portfolio. (Def. 56.1 Stmt. ¶ 200; Pl. 56.1 Stmt. ¶ 200.) On August 1, 2008, Wachovia sent SCF an email with an attached spreadsheet that detailed the bids received and the potential monetary loss associated with the sale of each investment. The spreadsheet reflected a loss of $ 947,290 on the sale of the Lehman Note and offered no analysis or advice. (See Karlinsky Decl. Ex. 33: Email from Brain Gorman to Rodriguez dated Aug. 1, 2008.) While Wachovia personnel were available, SCF did not seek their guidance. Importantly, Wachovia did not disclose that only Lehman Brothers bid on the Lehman Note. (Devyver Decl. Ex. L: Deposition of Brain Gorman at 118-125; Pl. 56.1 Stmt. ¶¶ 211, 203; see Def. 56.1 Stmt. ¶ 203.)

SCF maintains that had Wachovia provided SCF with this "red flag" information it would have ordered the sale of the Lehman Note. (Karlinsky Decl. Ex 3: Affidavit of Donald A. Smith, Jr. dated April 21, 2011 ("Smith Aff.") ¶ 13.) However, SCF did not sell the Lehman Note. (See Devyver Decl. Ex. B: SCF's Responses to Wachovia's First Requests for Admission dated Jan. 10, 2010 at RFA 28.)

IV. Lehman Brother's Bankruptcy

Until September 11, 2008, the value of the Lehman Note never fell below $ .85 on the dollar. (Def. 56.1 Stmt. ¶ 220; Pl. 56.1 Stmt. ¶ 220.) On September 15, 2008, Lehman Brothers filed for Bankruptcy and SCF's $ 25 million investment in the Lehman Note

plummeted to $ .08 on the dollar. (See Def. 56.1 Stmt. ¶¶ 215, 256; Pl. 56.1 Stmt. ¶¶ 215, 256.) As of December 31, 2010, its value rose to $.22875 on the dollar. (See Def. 56.1 Stmt. ¶ 256; Pl. 56.1 Stmt. ¶ 256.)

## DISCUSSION

I. Motion to Strike

Wachovia first moves to strike the Smith affidavit, arguing it is not based on personal knowledge and is contradicted by prior deposition testimony. Wachovia takes issue with the following portion:

> I can say with fair certainty that if SCF, through its chief financial officer, or its director of investments, or its chief operating officer, or directly to myself, had learned of the matters which discovery has only now revealed, we would have given Wachovia an explicit written direction to sell the Lehman Note.

(Smith Aff. ¶ 13.) Neither argument is compelling.

A. Personal Knowledge

An affidavit may be stricken if it is not based on personal knowledge. Kaur v. N.Y. City Health and Hosps. Corp., 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010) (citations omitted); Fed. R. Civ. P. 56(e).

As the CEO and a member of its Investment Committee, Smith is entirely qualified to testify about his company's decision making process. Cf. Lion Oil Trading & Transp., Inc. v. Statoil Mktg. and Trading (US) Inc., 728 F. Supp. 2d 531, 534 n.1 (S.D.N.Y. 2010). Moreover, there is no basis to question Smith's assertion that his affidavit is based on personal knowledge. (Smith Aff. ¶ 1.)

Despite Wachovia's contention, Smith's use of the term "fair certainty" does not indicate a lack of personal knowledge. "[F]air certainty" merely describes Smith's level of confidence in his belief. If anything, it emphasizes his degree of personal knowledge by demonstrating that Smith can evaluate the strength of his prediction of how SCF would have acted in this hypothetical situation.

B. Prior Deposition Testimony

"It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." Mack v. United States, 814 F.2d 120, 124-25 (2d Cir. 1987).

At his deposition, Smith testified that the Investment Committee did not make decisions about whether to hold or sell securities; rather, those issues were delegated to the Investment Team and SCF's external investment managers. (See, e.g., Letter in Opp'n to Def.'s Mot. to Strike dated May 11, 2011 Ex. 1: Deposition of Don Smith dated Jan. 21, 2011 at 68.) Wachovia argues that this testimony, and other evidence, contradicts the assertion in Smith's affidavit that if SCF had known of the red flag information it "would have given Wachovia an explicit written direction to sell the Lehman Note." This argument is unavailing.

On a motion to strike, testimony from other deponents is irrelevant. See Mack v. United States, 814 F.2d at 124-25. Moreover, the "other testimony" cited by Wachovia does not directly contradict Smith. At his deposition, Wachovia never asked Smith what SCF would have done if it had known about the red flags. Wachovia asks this Court to infer that because Smith did not make day-to-day decisions about SCF's investments, he cannot testify how SCF would have acted in this extraordinary circumstance. But Smith's testimony on that point, is a question

of weight. To strike, Wachovia must demonstrate that Smith's affidavit directly contradicts "his own prior deposition testimony." Buttry v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995) (emphasis added). Wachovia has not carried this burden. Accordingly, Wachovia's motion to strike the Smith affidavit is denied.

II. Summary Judgment

    A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party." 233 East 69th Street Owners Corp. v. LaHood, --- F. Supp. 2d ---, 2011 WL 2436889, at *4 (S.D.N.Y. Jun. 6, 2011) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). "Nonetheless, the party opposing summary judgment 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence' in support of its factual assertions." Stiles v. HarperCollins Publishers LLC, --- F. Supp. 2d ----, 2011 WL 3426673, at *4 (S.D.N.Y. Aug. 05, 2011) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). "All reasonable inferences must be construed in the nonmoving party's favor, and if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" Binder & Binder PC v. Barnhart, 481 F.3d 141, 148 (2d Cir. 2007) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (alteration in original)).

B. Causation

To prevail on a claim for breach of contract and breach of fiduciary duty, a plaintiff must demonstrate its injury was caused, both directly and proximately, by the defendant's breach. See AMERCO v. Shoen, 907 P.2d 536, 542 (Ariz. App. 1995). "The proximate cause of an injury is defined in Arizona as 'that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred.'" Firetrace USA, LLC v. Jesclard, No. 07-02001, 2010 WL 3523067, at *3 (D. Ariz. Sept. 3, 2010) (quoting Saucedo ex. re. Sinaloa v. Salvation Army, 24 P.3d 1274, 1278 (Ariz. Ct. App. 2001)). "To have proximately caused an injury, the wrongful conduct must be a 'substantial factor in bringing about the harm.'" Firetrace USA, 2010 WL 3523067, at *3 (quoting Standard Chartered PLC v. Price Waterhouse, 945 P.2d 317, 343 (Ariz. Ct. App. 1997)). Proximate causation is generally a question of fact for the jury. See, e.g., Hydroculture, Inc. v. Cooper & Lybrand, 848 P.2d 856, 862 (Ariz. 1992).

Wachovia moves for summary judgment on both claims arguing that there is no evidence that its failure to disclose[2] proximately caused SCF's injury. Wachovia asserts that SCF would not have sold the Note even if Wachovia disclosed information suggesting the Note was risky. At the outset, this argument ignores SCF's theory that Wachovia breached its duties by failing to sell the Note. (See Compl. ¶ 55.) Under this theory, Wachovia's failure to act was both a direct and proximate cause of SCF's injury.

---

[2] For purposes of this discussion, Wachovia has assumed the existence of a fiduciary duty and a breach. (Tr. of Oral Arg. dated May 20, 2011 ("Tr.") at 13.)

In addition, a genuine issue of material fact exists as to how SCF would have acted if Wachovia disclosed the numerous red flags surrounding the Lehman Note. Wachovia's notion that because SCF always followed its investment advice, SCF would not have sold the Lehman Note rests on drawing an inference against the non-moving party. Wachovia has not identified any evidence showing SCF would have followed Wachovia's advice in this "unprecedented" situation. (Mem. of Law in Support of Wells Fargo Bank, N.A.'s Mot. for Summ. J. dated Mar. 22, 2011 ("Def.'s Mot.") at 1.)

Finally, Wachovia characterizes SCF's decision to hold the Lehman Note in August 2008 as proof that SCF would not sell it. But that argument ignores the fact that Rodriguez decided to hold the Note without the benefit of red flag information withheld by Wachovia. (See Smith Aff. ¶ 13.) Thus, there is a genuine dispute as to whether Wachovia's failure to disclose was a substantial factor in bringing about SCF's harm. Accordingly, Wachovia has failed to carry its burden, and summary judgment on this issue is denied.

C. Wachovia's Obligations to Inform SCF of the Risks of the Lehman Note

1. Contractual Duty to Inform

Under Arizona law, a court should enforce a contract "in accordance with the parties' intent." In re Raintree Healthcare Corp., 431 F.3d 685, 690 (9th Cir. 2005) (citing Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1138 (Ariz. 1993)). To determine intent, a court "is not limited to the words set forth in the document." Darner Motor Sales v. Universal Underwriters Ins. Co., 682 P.2d 388, 398 (Ariz. 1984). Extrinsic evidence including the parties "course of dealing" may be used to interpret the provisions of an agreement. AROK Const. Co. v. Indian Const. Services, 848 P.2d 870, 877-78 (Ariz. App. Div. 1993) (citation

omitted). "'A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.'" AROK Const. Co., 848 P.2d at 878 (quoting Restatement (Second) of Contracts § 223(1)). If upon consideration of this evidence there is no issue of material fact as to a contract's meaning then summary judgment is appropriate. See AGA Shareholders, LLC v. CSK Auto, Inc., 589 F. Supp. 2d 1175, 1180-85 (D. Ariz. 2008).

Under the Agreement, Wachovia is obligated to "maintain" and "protect" SCF's collateral. This Court previously determined that those terms are "susceptible to competing interpretations," and therefore extrinsic evidence, such as the parties' course of dealing, is properly considered. SCF v. Wachovia, No. 09 Civ. 9513 (WHP), 2010 WL 5422505, at *10 (S.D.N.Y. Dec. 14, 2010) (citing Verlarde v. Pace Membership Warehouse Inc., 105 F.3d 1313, 1317 (9th Cir. 1997)).

Wachovia argues that the parties' course of dealing establishes that its responsibilities to "maintain" and "protect" did not require it to "advise SCF of the risks of holding [the Lehman Note]." (Def.'s Mot. at 21.) In support of this argument, Wachovia points to evidence that purports to establish that it never provided—and SCF never requested—information about topics like Lehman Brother's risk factors. However, this does not establish, as a matter of law, that Wachovia was not obligated to disclose this type of information during an "unexpected" and "unprecedented" period in the financial markets. (Def.'s Mot. at 1.)

Moreover, SCF has adduced evidence demonstrating a genuine factual dispute over the import of the parties' course of dealing. For example, Wachovia occasionally notified SCF about risky investments in its portfolio. (See Karlinsky Decl. Ex. 19: Email From Brian

Gorman to A. Rodriguez at Bates No. WACH-SCF-18465; Ex. 15: Letter from R. Rick Moos to Jerry LeCompte dated Dec. 13, 1994; see also Ex. 16 Letter from R. Rick Moos to Jerry LeCompte dated Jan. 27, 1998.) Accordingly, Wachovia's motion for summary judgment on the breach of contract claim for non-disclosure is denied.

### 2. Fiduciary Duty to Inform

"'The duty of an agent to make full disclosure to his principal of all material facts relevant to the agency is fundamental to the fiduciary relation of principal and agent.'" In re Matter of Swartz, 630 P.2d 1020, 1026 (Ariz. 1981) (quoting 3 Am. Jur. Agency § 200 (1962)). The duty to disclose information is limited to "what is reasonable in any given instance" and to information "of which the agent is aware, or should be aware in the exercise of due care." Maurer v. Cerkvenik-Anderson Travel, Inc., 890 P.2d 69, 72 (Ariz. App. Div. 1994) (quoting Rookard v. Mexicoach, 680 F.2d 1257, 1263 (9th Cir.1982).) Although an investment agent is not required to "disclose its internal deliberations," Flanigan v. Gen. Elec., 242 F.3d 78, 85 (2d Cir. 2001) (quotation omitted), it must "make full disclosure . . . of all material facts relevant to the agency." Swartz, 630 P.2d at 1026.

Although SCF had always followed Wachovia's investment advice in the past, Wachovia has not identified any evidence that SCF was certain to follow Wachovia's advice in this "unprecedented" situation. (Def.'s Mot. at 1.) Therefore, there is a genuine dispute whether the information Wachovia withheld was material.

Wachovia also argues that a fiduciary has no duty to disclose information that is widely available. See Seibert v. Sperry Rand Corp., 586 F.2d 949 (2d Cir. 1978). However, the information withheld by Wachovia was not widely available. Neither Wachovia's internal watch

list nor the rationale behind its decision to hold the Lehman Note was known in the marketplace. In fact, the evidence suggests the very opposite is true—only Wachovia knows why it decided to hold the Note. Accordingly, Wachovia's motion for summary judgment on the breach of fiduciary duty for non-disclosure is denied.

      C.  Wachovia's Obligation to Sell the Lehman Note

"[I]n an action asserting a claim for breach of fiduciary duty, 'like all tort actions, a plaintiff must allege and prove the existence of a duty owed, a breach of that duty, and damages causally related to such breach.'" Surowiec v. Capital Title Agency, Inc., --- F. Supp. 2d ----, No. CV–09–2153–PHX–DGC, 2011 WL 1671925, at *4 (D. Ariz. May 4, 2011) (quoting Smethers v. Campion, 108 P.3d 946, 949 (Ariz. Ct. App. 2005)). Similarly, "[t]o prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff." Frank Lloyd Wright Found. v. Kroeter, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010) (citing Clark v. Compania Ganadera de Cananea, S.A., 387 P.2d 235, 237 (1963)). "The breach of an agent's duty is a question of fact." Thomas and Wong General Contractor, Inc. v. Wallace, 2010 WL 475690, at *9 (Ariz. Ct. App. 2010) (citation omitted); Smethers, 108 P.3d at 949.

      Wachovia avers it did not breach its duties because it "reasonably based its determination" to hold the Note on "available market information" which was consistent with similar market participants. (Def.'s Mot. at 18.) At the outset, the evidence does not indicate that Wachovia decided to hold the Note for SCF's portfolio. Rather, it suggests that Wachovia decided that all its clients should hold Lehman investments until maturity. (See Devyver Decl.

Ex. O: O'Connor Dep. 184-89.) Wachovia has not adduced sufficient evidence to show that this global decision fulfilled its contractual or fiduciary obligations to SCF.

Additionally, Wachovia argues that Lehman's high rating by various ratings agencies, as well as SCF's external investment managers demonstrates that its decision to hold the Note was "reasonable." (Def.'s Mot. at 22.) But this Court cannot conclude as a matter of law that contention is true. Accordingly, Wachovia's motion for summary judgment on this issue is denied.

### D. Damages

Wachovia contends that SCF's damages are unrealized because it has not sold the Note, and that an award of damages would provide SCF a double recovery. (Reply in Supp. of Wells Fargo Bank, N.A.'s Mot. for Summ. J. dated May 3, 2011 at 9.) However, Wachovia has not cited any controlling law to support this argument. SCF does not have to sell or transfer the Note to demonstrate a loss. See Gilbert v. EMG Advisors, Inc., No. 97-172256, 1999 WL 160382, *4 (9th Cir. Mar. 17, 1999) (table decision) ("unrealized (but similarly real) losses" caused by a breach of fiduciary duty are cognizable damages) (citation omitted); Oliver v. Henry, No. 1 CA–CV 10–0701, --- P.3d ----, 2011 WL 3207824, at *5 (Ariz. App. Div. Jul. 28, 2011) (Plaintiff "not required to sell, exchange, or otherwise dispose of his damaged and subsequently repaired Jeep Wrangler in order to demonstrate an actual and provable loss in value; instead, the loss could be established through other competent means, such as expert appraisal of the pre-loss and post-repair values."). Finally, Wachovia conceded at oral argument, that SCF's willingness to tender the Lehman Note upon an award of damages obviates any concern about double

recovery. (See Tr. at 21; Pl. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. dated Apr. 22, 2011 at 16.)

## CONCLUSION

For the foregoing reasons, Wachovia's motion for summary judgment dismissing the action and its motion to strike the Smith Affidavit are denied. The parties are directed to appear for a conference on September 22, 2011, at 2:00 p.m. The Clerk of Court is directed to terminate the motion pending at ECF. No. 53.

Dated: September 1, 2011
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Martin Edward Karlinsky
Butzel Long, P.C. (NYC)
380 Madison Avenue, 22nd Floor
New York, NY 10017
*Counsel for Plaintiff*

Mary Joan Hackett
Reed Smith, LLP (Pittsburgh)
225 Fifth Avenue
Pittsburgh, PA 15222
*Counsel for Defendant*