UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| SCF ARIZONA, | : | |
| Plaintiff, | : | 09 Civ. 9513 (WHP) |
| vs. | : | **ECF CASE** |
| WELLS FARGO BANK, N.A., | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINIONS OF PROFESSOR R. GLENN HUBBARD

Pursuant to Rules 104(a), 401, 403, and 702 of the Federal Rules of Evidence, Plaintiff SCF Arizona ("SCF"), moves the Court, *in limine,* for an order excluding the expert opinions of Professor R. Glenn Hubbard and precluding Dr. Hubbard from testifying at trial. As shown below, Dr. Hubbard's opinions are irrelevant to the issues in this case, are not based on sufficient facts or data, and are duplicative of other, more competent, expert testimony. As a result, Dr. Hubbard should be precluded from testifying at trial.

### PERTINENT FACTS

This case arises from the failures of Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, N.A. ("Wachovia"), to fulfill its contractual and fiduciary duties to SCF in connection with the securities lending program administered by Wachovia on behalf of SCF. In particular, Wachovia acted as SCF's securities lending agent pursuant to an Agreement for Securities Lending Services (the "Agreement"), a copy of which is attached hereto as Exhibit 1. As SCF's securities lending agent, Wachovia was authorized to lend securities owned by SCF to third parties, and to receive cash collateral from the third parties to secure the loans. *Id.* at ¶ 1.

Wachovia was further authorized by SCF to invest and reinvest the cash collateral in certain low-risk, highly liquid investments. *See id.* at ¶¶ 4, 4(e). The fundamental objective of these collateral investments was characterized, by Wachovia itself, as "preservation of capital and liquidity." *See* Investment Policy Metropolitan West Securities, Inc., annexed hereto as Exhibit 2. A schedule of permitted investments was listed on Exhibit D to the Agreement, which was to be amended from time to time to reflect changes with issuers, evolving financial instruments, and changed financial market conditions. *See* Exhibit 1, ¶ 4(e).

On March 23, 2007, Wachovia invested $25 million of cash collateral belonging to SCF in a senior, unsecured floating rate note issued by Lehman Brothers Holdings Inc. ("Lehman") with a maturity date of March 23, 2009 (the "Lehman Note"). Almost immediately after purchasing the Lehman Note, Wachovia became aware of increasing risks associated with Lehman and, in turn, increasing risk associated with holding the Lehman Note in SCF's account.

At trial, SCF will present evidence showing that by late 2007, and throughout the financial crisis of 2008, Wachovia had actual knowledge of significant risks associated with Lehman and the Lehman Note.[1] Specifically, as early as March 2007, Wachovia restricted purchases of Lehman commercial paper to maturities within 13 months. Then, throughout 2008, Wachovia implemented numerous restrictions and internal controls on Lehman investments

---

[1] In *City of St. Petersburg, Florida v. Wells Fargo Bank, N.A.*, No. 8:10-cv-693-T-26TBM, pending in the United States District Court for the Middle District of Florida, plaintiff City of St. Petersburg, whose claims are virtually identical to those in this case and involve the same Lehman note that is at issue in this action, has made a similar motion *in limine* to exclude the expert opinions of Professor Hubbard on virtually identical bases. (A true and correct copy of the publicly filed Plaintiff's Motion in Limine to Exclude Expert Opinions of R. Glenn Hubbard and Incorporated Memorandum of Law is annexed hereto as Exhibit 3.) Notably, in the St. Petersburg motion, plaintiff relies on certain information disclosed during the discovery phase of that case that has not been, and which should have been, produced in this action. This information further demonstrates Wachovia's consideration and knowledge of the increased risk associated with the Lehman Note. (The motion, together with its supporting evidence, is incorporated herein by reference.) SCF reserves all rights with respect to the information disclosed in that motion and with respect to any other documents or testimony that may be disclosed in the St. Petersburg action that should have been similarly disclosed herein.

including (i) restricting purchases of all Lehman commercial paper "until further notice"; (ii) placing Lehman on its "Positions Under Watch" and "WGSL Notable Credits" reports; (iii) limiting all new loans to Lehman to overnight or open; (iv) placing Lehman on its "high risk asset list"; (v) allowing unsecured term exposure to Lehman to run off and not allowing any further term exposure to be added; and (vi) capping overnight exposure.

With respect to SCF, however, Wachovia took no action to liquidate the Lehman Note or to otherwise advise SCF of the increasing risk associated with holding it.  Indeed, SCF will present evidence at trial that Wachovia failed to disclose *any* of the material information that it possessed or any of its concerns with respect to the Lehman Note to SCF.  Moreover, in June and July 2008, Lehman was downgraded on three separate occasions by each of the three national credit rating agencies.  The evidence presented at trial will show that none of these downgrades were reported to SCF, despite the fact that Wachovia was obligated both contractually and by virtue of its fiduciary duty to promptly notify SCF of any increase in risk to the investments so that SCF could evaluate the investment in particular and determine whether to terminate the securities lending program in general.  *See* Exhibit 1, ¶¶ 4(d), (e) and (k).

Ultimately, on September 15, 2008, Lehman Brothers declared bankruptcy and defaulted on the Lehman Note.  As a result, SCF has sustained damages equal to the difference between its cost to purchase the Lehman Note ($25,000,000) and the present market value of the Lehman Note (believed to be approximately $6,250,000).

In defending this action, Wachovia has retained Dr. Hubbard to offer expert testimony on how the financial markets viewed Lehman Brothers in the summer of 2008.  A copy of Dr. Hubbard's Expert Report and a copy of the relevant pages from his deposition are attached hereto as Exhibits 4 and 5, respectively.

In short, the gravamen of Dr. Hubbard's opinion is that in the summer of 2008, "the market" did not "reasonably foresee" that Lehman Brothers would declare bankruptcy.  This conclusion is based on Dr. Hubbard's review of various market indicators (such as prices, ratings, and credit default swaps) which, in his opinion, reflect that the "market" did not foresee a Lehman Brothers bankruptcy.

Importantly, Dr. Hubbard does not, and indeed cannot, offer any opinion as to what *Wachovia* foresaw with respect to Lehman Brothers or the Lehman Note.  (Exhibit 5, Hubbard Dep. at 56-60; 63-64.)  Dr. Hubbard has not reviewed or evaluated any of Wachovia's internal documents in this case, has not spoken or met with anyone at Wachovia about any aspect of this case, nor reviewed any of the deposition testimony in this case.  (*Id*. at 12:1-18:25, 110:1-16, 121:19-122:12, Exhibit 4, Hubbard Report, Appendix C.)  As a result, Dr. Hubbard's academic exercise of trying to discern what "the market" foresaw in 2008 is detached from the actual core issue in this case – whether *Wachovia* fulfilled its contractual and fiduciary obligations to SCF in view of what *Wachovia* knew about the risk of continuing to hold the Lehman Note, the stated objective of the collateral investments in the securities lending program, and Wachovia's knowledge of SCF's risk tolerance.

Moreover, Dr. Hubbard's ultimate opinion — that the Lehman Brothers bankruptcy was not "reasonably foreseeable" — is misleading, imprecise, and irrelevant.  Dr. Hubbard cannot define the term "reasonably foreseeable" in any meaningful way.  According to Dr. Hubbard, "reasonably foreseeable" is the term he used as a "summary statistic for talking about a series of data that would have informed market expectations about that probability."  (Exhibit 5, Hubbard Dep. 49:9-12.)  He further explains that the use of the term "reasonably foreseeable" in economic literature is a "way of characterizing default probabilities or things that are inferred from

4

derivative markets as providing information about the foreseeability of a default event." (*Id*. 49:19-23.) Dr. Hubbard concedes, as he must, that the market's perception of the likelihood or probability of a Lehman default increased between March 2007 to the date immediately following Lehman's filing of bankruptcy, but he is unable to *quantify* the probability of a Lehman default. (*Id*. at 85:1-89:1.)

Indeed, Dr. Hubbard further concedes that it is necessary to know "what a client wanted" before being able to determine what is an acceptable level of risk for a particular client in a securities lending program, and that it is only after risk tolerance levels for specific clients are known that it is possible to determine whether the probability of a Lehman bankruptcy would be material to the client. (*Id*. 123.) Whereas some investors may tolerate a certain amount of risk, others will not. Dr. Hubbard, however, has never considered or examined the issue of SCF's risk tolerance or even the permitted investments contained on Exhibit D to the Agreement relating to SCF's collateral investments in its securities lending account. (*Id*. at 89:1-91:11, 92:19-23.) Therefore, Dr. Hubbard has no, and can offer no, opinion as to whether the increasing risk of the Lehman Note and the increasing probability of a Lehman default would have been material to SCF.

In the end, Dr. Hubbard's opinions are simply not helpful to the trier of fact, will exhaust valuable resources of the Court and parties, and will ultimately raise a risk of confusion of issues at trial. Dr. Hubbard's opinions do not address *Wachovia's* assessment of the Lehman Note, the propriety of *Wachovia's* decision to hold the Lehman Note in SCF's account, or *Wachovia's* failure to disclose any of the risks it had identified with respect to the Lehman Note. Moreover, Dr. Hubbard's opinion that the Lehman bankruptcy was not "reasonably foreseeable" is vague,

imprecise, and confusing in that he is unable to offer any meaningful opinion as to the probability of default or whether such a probability would have been material to SCF.

Finally, to the extent Dr. Hubbard's testimony would be admissible, such testimony would be duplicative of Wachovia's other substantive expert in this matter — Edmon W. Blount ("Mr. Blount") (a copy of Mr. Blount's Expert Report is attached as Exhibit 6). In his expert report, Mr. Blount opines as to why, in his opinion, it was reasonable for Wachovia to continue to hold the Lehman Note in SCF's account through the summer of 2008. Like Dr. Hubbard, Mr. Blount bases his opinion on ratings and other information available to the market. Unlike Dr. Hubbard, however, Mr. Blount's opinions are at least relevant to the central issue in this case: the propriety of Wachovia's management of the SCF collateral investments and the Lehman Note. Adding Dr. Hubbard's testimony on top of Mr. Blount's adds no value to the case and, indeed, for the reasons stated in this motion, injects irrelevant and misleading issues that would serve only to confuse the issues and cause delay and expenditure of resources.

For these reasons, SCF respectfully requests that Dr. Hubbard's expert report be stricken and that Dr. Hubbard be precluded from offering testimony at trial.

**ARGUMENT**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In determining whether to admit expert testimony under this Rule, the Court serves a critical "gatekeeping" function. *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Daubert* v. *Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993)). It is the responsibility of the Court "to ensure [both] the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd.* v. *Carmichael,* 526 U.S. 137, 152 (1999).

In the Second Circuit, courts engage in a rigorous three-part inquiry to fulfill this "gatekeeping" function. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Trial courts may admit expert testimony only if the following three requirements are met: (1) the expert "is 'qualified to testify' as to a particular matter," (2) "the opinion is based upon reliable data and methodology," and (3) "the testimony will 'assist the trier of fact.'" *Id.* (quoting Fed. R. Evid. 702).

"'[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.'" *DeRienzo v. Metropolitan Trasp. Auth.*, 694 F. Supp. 2d 229, 235 (S.D.N.Y. 2010) (quoting *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).

As discussed below, Dr. Hubbard's opinions fail to meet the standards of relevance and reliability set forth in *Daubert* and its progeny. Moreover, to the extent that any of the testimony Dr. Hubbard intends to offer is admissible, such testimony would be duplicative of Wachovia's other substantive expert.

## I. DR. HUBBARD'S OPINION THAT "THE MARKET" DID NOT FORESEE THE LEHMAN BANKRUPTCY SHOULD BE EXCLUDED AS IRRELEVANT

Rule 702's requirement that expert testimony "must assist the trier of fact" "goes primarily to relevance." *Daubert,* 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* Here, Dr. Hubbard's opinion that the "market" did not foresee the Lehman bankruptcy does not relate to the facts of this case, and, therefore, should be excluded. *See id.*

SCF's theory of liability in this case is that, given what Wachovia knew about the increasing risk of holding the Lehman Note and related matters, it was a breach of Wachovia's contractual and fiduciary obligations to SCF to continue holding the Lehman Note without advising SCF of such increasing risk or notifying it of Wachovia's internal assessments, decisions and actions with respect to Lehman. Whether "the market" foresaw the Lehman bankruptcy is wholly irrelevant to this theory and, as a result, an opinion on this matter would not be helpful to the trier of fact. *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1258 (2d Cir. 1987) (excluding expert testimony as irrelevant and misleading).

Put simply, the critical issue in this case is what *Wachovia* knew about Lehman. On this issue, Dr. Hubbard acknowledges that he has no opinion as to the "appropriateness of Wachovia's risk assessment of Lehman Brothers because [he does] not know what its risk assessment was." (Exhibit 5, Hubbard Dep. at 12:1-18:25, 110:1-16, 121:19-122:12.) As a result, he cannot even offer an opinion about whether Wachovia's view was consistent with "the

8

market's view."  Thus, Dr. Hubbard's academic exercise of trying to discern "the market's" view of Lehman is irrelevant, will not assist the trier of fact, and would serve only to confuse the issues and cause undue delay.

## II. DR. HUBBARD'S OPINION THAT THE LEHMAN BANKRUPTCY WAS NOT "REASONABLY FORESEEABLE" SHOULD ALSO BE EXCLUDED

### A. Dr. Hubbard's Opinion that the Lehman Bankruptcy was Not "Reasonably Foreseeable" is Unreliable because it is Not Based on Sufficient Facts and Data

Under Rule 702, an expert's opinion must be "based upon sufficient facts or data."  Fed. R. Evid. 702.  A court will preclude an expert's opinion which lacks such sufficient facts and data.  *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004).  An expert's opinion must also be based on more than the expert's "subjective belief or unsupported speculation."  *Daubert,* 509 U.S. at 594 (emphasis added); *see GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) ("Testimony from an expert, predicated on 'subjective belief' and 'unsupported [factual] speculation' violates the Supreme Court's directions for expert testimony in *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993).").

Here, Dr. Hubbard's opinion that the Lehman bankruptcy was not "reasonably foreseeable" should also be excluded because it is not based on sufficient facts or data to be reliable.  In particular, during his deposition, Dr. Hubbard defined "reasonably foreseeable" as a "way of characterizing default probabilities or things that are inferred from derivative markets as providing information about the foreseeability of a default event."  (Exhibit 5, Hubbard Dep. 49:19-23).  The "reasonably foreseeable" standard used by Dr. Hubbard fails to take into account the risk tolerance of SCF or the specific information about Lehman possessed by Wachovia. And without considering these factors, it is impossible to determine whether the information that

9

Wachovia possessed, and withheld, was material to SCF. Whether the probability of a Lehman default could be inferred from the derivative markets does not assist the trier of fact in resolving the core critical issues in this case, what Wachovia knew about Lehman and whether that knowledge would have been material to SCF in view of the design of the securities lending program and in view of SCF's risk tolerance.

The investor at issue in this case is of course SCF. Dr. Hubbard, however, did not review evidence related to SCF's risk tolerance. He did not review the Agreement, he did not examine SCF's communications with Wachovia, and he did not read the depositions of SCF's representatives. Indeed, Dr. Hubbard has not engaged in a single conversation with anyone at Wachovia or at SCF regarding the securities lending program. (*Id.* at 12:1-18:25, 110:1-16, 121:19-122:12.) Dr. Hubbard has no knowledge or opinion about the information possessed by Wachovia or about SCF's risk tolerance. (*Id.* at 123:1-12.) As a result, his opinion is wholly subjective, imprecise, and misleading. It does not meet the *Daubert* standard.

Accordingly, Dr. Hubbard should be precluded from offering any testimony regarding whether the Lehman bankruptcy was "reasonably foreseeable" or whether the risk of bankruptcy was probable.

**B.    Dr. Hubbard's Opinion that the Lehman Brothers Bankruptcy was Not "Reasonably Foreseeable" Will Not Assist the Trier of Fact and Runs the Risk of Causing Confusion**

In addition, Dr. Hubbard's subjective belief about the risk of Lehman declaring bankruptcy would not be of any assistance to the Court and would, in fact, run the risk of causing confusion. In order for expert testimony to be admissible under Rule 702, the proponent of the testimony must establish that it will be helpful to the trier of fact. *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 729 (S.D.N.Y. 2011). Expert testimony is helpful if it concerns matters beyond the understanding of the average lay person. *Id.*; *U.S. v. Hashmi*, No. 06 Crim.

442 (LAP), 2009 WL 4857608, *1 (S.D.N.Y. Dec. 11, 2009).  In addition, "[e]ven if expert testimony is deemed admissible, however, it is still subject to exclusion under Federal Rule of Evidence 403 . . . 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"  *Mengele v. Patriot II Shipping Corp.*, No. 99 Civ. 8745 (LTS) (KNF), 2002 WL 237847, *1 (Feb. 19, 2002) (quoting Fed. R. Evid. 403); *see also Zaccaro v. Shah,* 746 F. Supp. 2d 508, 517 (S.D.N.Y. 2010); *Wald v. Costco Wholesale Corp.*, No. 03 Civ. 6308 (JSR), 2005 WL 425864, *6 (S.D.N.Y. Feb. 22, 2005) (excluding generalized opinions of expert that "cited no empirical studies that are sufficiently specific to the facts at hand to be helpful" and appeared to be "more impressionistic, subjective and conclusory than scientific" . . . because they would be irrelevant, unhelpful, and "would confuse and prejudice the jury from forming its own opinions").  Here, because Dr. Hubbard is unable to define with any precision what he means by "reasonably foreseeable," his opinion will not help the trier of and runs the risk of causing confusion.

Specifically, an opinion that an event is reasonably foreseeable, or that there is not a material probability of that event occurring, indicates a quantitative idea.  *U.S. v. Frazier,* 387 F.3d 1244, 1265-67 (11th Cir. 2004) (excluding forensic expert from testifying that the recovery of hair or seminal evidence "would be expected" when the opinion "expresse[d] an intrinsically probabilistic or quantitative idea" without any precision).  Dr. Hubbard's determination that the Lehman bankruptcy was not reasonably foreseeable implicates that a probability of the event occurring was identified, his methods prevent him from quantifying that probability, therefore it lacks sufficient certainty.  Dr. Hubbard cannot demonstrate that there is a bright line for when an event would be reasonably foreseeable or what level of risk would be material.  In other words,

even if Dr. Hubbard is allowed to testify that the Lehman bankruptcy was not reasonably foreseeable, he could still not testify as to what the probability of Lehman declaring bankruptcy was.  Further, as discussed above, Dr. Hubbard can offer no insight into how important any probability of bankruptcy would have been to SCF.  Under these circumstances, this opinion is too imprecise to be of any help and runs the risk of confusing the issue.

Moreover, in this case, Wachovia throughout 2007 and 2008 made its own determination about the risk of Lehman's default.  Its credit analysts and investment committees closely monitored Lehman's performance, Wachovia took internal steps to insulate itself, and, at the same time, withheld that vital information from SCF.  Whether this risk of a Lehman default was "material" in light of SCF's risk tolerance is a matter within the ken of the fact finder, subject to primary evidence from Wachovia and SCF.  *See Feinberg v. Katz*, No. 01 Civ. 2739, 2007 WL 4562930, *11 (S.D.N.Y. Dec. 21, 2007) (excluding expert witness from testifying that omitted information was material and that creditors would have denied credit to the company if they had been furnished with the information, because the testimony usurped the role of the trier of fact).

In short, the Court is certainly capable of determining whether the probability of a Lehman default on a $25,000,000.00 investment is material in light of SCF's risk tolerance.  Dr. Hubbard's opinion would not be of any assistance to the Court in this regard and is likely to cause confusion.  Accordingly, this opinion should be excluded pursuant to Fed. R. Evid. 702 and 403 on the grounds that it will not assist the trier of fact and would be unfairly prejudicial to SCF.

### III. TO THE EXTENT ANY OF DR. HUBBARD'S OPINIONS ARE ADMISSIBLE, THEY SHOULD BE EXCLUDED BECAUSE THEY ARE DUPLICATIVE OF THE OPINIONS OFFERED BY WACHOVIA'S OTHER EXPERT

In addition, Rule 403 also provides that evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Where expert testimony 'substantially overlap[s]' with the testimony of another expert, courts exclude that testimony." *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL, 1674796, *11 (S.D.N.Y. May 2, 2011) (quoting *Price v. Fox Entm't Group, Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y. 2007)). "The Second Circuit has instructed that courts, in considering whether to admit expert testimony, should consider 'whether other experts exist who are more specifically qualified and who are nonetheless not in the employ of the company or industry whose practices' are at issue." *Id.* (quoting *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997)).

In this case, none of Dr. Hubbard's opinions regarding what the "market" foresaw or whether the Lehman Brothers bankruptcy was "reasonably foreseeable" is admissible. To the extent that Dr. Hubbard intends to express any other opinions that would arguably be admissible at trial, such opinions would be duplicative of Wachovia's other expert in this matter - Edmon W. Blount. Mr. Blount is expected to testify as to why, in his opinion, it was reasonable for Wachovia to continue to hold the Lehman Investment in SCF's account through the summer of 2008. (Exhibit 6, Blount Expert Report, ¶¶46-79.) SCF disagrees with this opinion and will challenge the credibility and reliability of it at trial. Unlike Dr. Hubbard, however, Mr. Blount's opinion is at least relevant to the issues in this case, i.e., whether Wachovia properly managed the Lehman Note on behalf of SCF.

Moreover, in forming his opinion, Blount relies on the same types of information as Hubbard. In particular, both Hubbard and Blount relied upon and are expected to testify about (1) Lehman's credit ratings, (2) whether other sophisticated market participants (such as money market mutual funds and local government investment pools) held investments in Lehman, (3) whether Lehman Brothers was in the S&P 500 and S&P 100, and (4) and whether a government bailout could have prevented the Lehman Brothers bankruptcy. Allowing both Dr. Hubbard and Mr. Blount to testify about these facts would be duplicative and would be unfairly prejudicial to SCF. *F.H. Krear & Co.*, 810 F. 2d 1250, 1258 (2d Cir. 1987) (experts testimony would have been cumulative of the testimony of at least four other witnesses); *Highland Capital Magmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 184 (S.D.N.Y. 2008) (excluding opinions of seven expert witnesses when other expert witnesses have already testified on the same subject); *AUSA Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200, 1202 (1995) (requirement that "each side [] put on only one expert witness in any particular area of expertise . . . is designed to eliminate duplicative testimony and to avoid giving and advantage to the side that can afford the most expert witnesses); *Williams v. County of Orange*, No. 03 Civ. 5182 (LMS), 2005 WL 6001507, *6 (Dec. 13, 2005) ("proposed testimony is cumulative and should be excluded as unfairly prejudicial").

## CONCLUSION

For the reasons discussed above, Dr. Hubbard's expected testimony will not assist the trier of fact, is not based on sufficient facts or data, runs the risk of causing confusion, and will be duplicative of the testimony of Wachovia's other expert.  Accordingly, under Rules 104(a), 401, 403, and 702 of the Federal Rules of Evidence, and the principles set forth in *Daubert,* SCF's motion to strike Dr. Hubbard's report and to exclude Dr. Hubbard from testifying at trial should be granted.

Dated:   New York, New York
         March 23, 2012

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: /s/ Martin E. Karlinsky
    Martin E. Karlinsky, Esq. (MK 1639)
    A Member of the Firm
380 Madison Avenue
New York, New York 10017
(212) 818-1110
karlinsky@butzel.com

William D. Sheldon, Esq. (Admitted *Pro Hac Vice*)
SCF Arizona
3030 North Third Street
Phoenix, AZ 85012
(602) 631-2123
bsheldon@scfaz.com

Attorneys for Plaintiff SCF Arizona

## CERTIFICATE OF SERVICE

  I hereby certify that on March 23, 2012, I electronically filed the foregoing document with the Clerk of the within Court using the Court's CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by the CM/ECF system.

                <u>/s/ Martin E. Karlinsky</u>
                Martin E. Karlinsky, Esq.